UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRIS OMEKAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. 07-02134-JDB |
| v. | ) |
| | ) |
| | ) |
| DISTRICT OF COLUMBIA | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff, Chris Omekam, states the following in opposition to Defendant's Motion to Dismiss the Amended Complaint:

Plaintiff has moved for leave to file a second amended complaint which cures all of the claimed defects in the prior pleading.

Respectfully submitted,

_____/s/_____
Alan Lescht, DC Bar # 441691
Susan L. Kruger, DC Bar # 414566
Alan Lescht & Assoc., PC
1050 17th St., NW, Suite 220
Washington, D.C. 20036
Tel (202) 463-6036
Fax (202) 463-6067
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRIS OMEKAM, )<br>)<br>Plaintiff, )<br>)<br>) Civil Action No. 07-02134-JDB<br>v. )<br>)<br>)<br>DISTRICT OF COLUMBIA )<br>)<br>)<br>Defendant. )<br>) | |

## SECOND AMENDED COMPLAINT

Plaintiff, Chris C. Omekam, by counsel, complains of the defendant as follows:

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction and venue is proper because the alleged unlawful acts took place here. This action was filed within 90 days after Plaintiff received his right to sue letter from the U. S. Equal Employment Opportunity Commission ("EEOC").

### THE PARTIES

2. Plaintiff Chris C. Omekam resides at 5920 Plata Street, Clinton, Maryland, 20735.

3. On information and belief, Defendant is a municipality organized under the laws of the United States and has its offices at 441 4th Street, N.W., Washington, D.C. 20001.

1

FACTS

4. This action is filed under Title VII of the Civil Rights Act of 1964 and alleges that Defendant discriminated against Plaintiff based on his nation origin and in reprisal for complaining to his supervisors about discrimination and for filing a complaint with the EEOC.

5. Plaintiff is of Nigerian descent.

6. Plaintiff was employed with Defendant from March 1994 until July 9, 2006. He held the position of Management Analyst in the Accreditation Unit of the Metropolitan Police Department ("MPD").

7. From 1997 to 2004, Plaintiff was in charge of the Accreditation Unit of MPD.

8. On or about March 2004, Defendant appointed Inspector Ethel Jones Accreditation Manager. Because Inspector Jones had no previous law enforcement accreditation program experience, Plaintiff continued to carry out accreditation manager duties and responsibilities and provide training to Inspector Jones.

9. On or about December 1, 2004, Director Mary Ann Rogers gave Plaintiff an interim performance rating of "outstanding."

10. On or about August 5, 2005, Inspector Jones rated Plaintiff's performance as merely "satisfactory." By contrast, Inspector Jones rated Plaintiff's American co-workers' performance as "outstanding" even though Plaintiff's overall performance was better than that of his coworkers and Plaintiff trained the co-workers who received outstanding performance evaluations.

11. When Plaintiff refused to sign the evaluation, Inspector Jones threatened to charge him with insubordination.

12. On or about August 18, 2005, Plaintiff appealed his performance evaluation rating with the MPD's Performance Rating Appeals Committee ("Committee").

13. In or about February 2006, Defendant hired Captain Ricky Mitchell as Assistant Accreditation Manager. Because Captain Mitchell had no accreditation experience, Plaintiff began training Captain Mitchell to perform the assistant accreditation manager duties.

14. On or about February 17, 2006, Inspector Jones threatened to suspend Plaintiff using inflammatory language. Inspector Jones told Plaintiff, "if you don't get going, I will suspend your a—."

15. On or about March 17, 2006, Plaintiff sent a memo to Inspector Jones complaining about a hostile work environment and how she treated him differently from his co-workers.

16. On or about March 31, 2006, Plaintiff filed a complaint with the EEOC claiming the Defendant discriminated against him based on his national origin when it issued him a performance rating of "satisfactory."

17. After Plaintiff complained about a hostile work environment and filed his charge of discrimination with the EEOC, Defendant began retaliating against Plaintiff.

18. Inspector Jones prevented Plaintiff from performing his job by removing most of Plaintiff's responsibilities. After Plaintiff complained about a hostile work

environment and filed his charge of discrimination with the EEOC, Defendant no longer permitted Plaintiff to:

a. contact the Commission on Accreditation for Law Enforcement Agencies Inc. (CALEA) staff;

b. have access to the Accreditation Consultants without prior approval by Inspector Jones or Captain Ricky Mitchell;

c. conduct facility inspections;

d. monitor the Accreditation Consultants deliverables;

e. review accreditation files completed by staff to ensure completeness and accuracy;

f. attend CALEA training conferences; and

g. review MPD policies to ensure that they met CALEA requirements.

19. On or about April 12, 2006, Captain Mitchell issued Plaintiff a Memorandum of Counseling and a Letter of Warning even though Plaintiff was still training Captain Mitchell to perform the assistant accreditation manager position. Captain Mitchell had no basis to issue the disciplinary actions against Plaintiff.

20. Defendant did not issue counseling memoranda or letters of warning to Plaintiff's American co-workers even though his American co-workers failed to attend mandatory meetings, disappeared from the office for long periods of time on personal business, and slept during work hours.

21. On or about May 3, 2006, the Committee concluded that Plaintiff's performance rating should be changed from "satisfactory" to "excellent."

22. Although Inspector Jones changed Plaintiff's performance rating from "satisfactory" to "excellent," as required by the Committee, she falsified the document by downgrading his individual rating factors so that the individual rating factors no longer added up to the Excellent Performance Evaluation rating that was recommended by the Committee.

23. On or about May 10, 2006, Inspector Jones again rated Plaintiff's performance as "satisfactory" even though his performance merited a rating of "excellent" or "outstanding." Plaintiff's American coworkers received higher performance ratings even though Plaintiff's performance was the same or better than that of his co-workers.

24. As a result of the "satisfactory" performance rating, Plaintiff did not receive a performance bonus. The "satisfactory" performance rating would have also made it more difficult for Plaintiff to be promoted.

25. On or about May 18, 2006, Plaintiff complained to the Executive Director of the Policy Development and Accreditation Unit of MPD about discrimination and hostile work environment. In addition, Plaintiff sent a memorandum to the Executive Director of the Policy Development and Accreditation Unit of MPD requesting a meeting with the Senior Executive Director of the Office of Organizational Development, MPD. The MPD officials refused to meet with Plaintiff or respond to his concerns because he had filed a complaint with EEOC.

26. On or about May 19, 2006, Plaintiff amended his EEOC complaint to include a claim for retaliation.

27. On or about May 24, 2006, Plaintiff attempted to meet with his supervisor and the Executive Director concerning his 2006 performance evaluation. During that meeting, the Executive Director became enraged and stated: "Do you know what you have done, filing a serious charge against the Department?"

28. Defendant continued to discriminate and retaliate against Plaintiff by initiating an investigation of Plaintiff's work in an attempt to find a reason to terminate Plaintiff. Defendant did not investigate the work of Plaintiff's co-workers.

29. As of July 9, 2006, Defendant had (1) removed most of Plaintiff's job duties; (2) refused to meet with Plaintiff regarding his allegations of harassment and discrimination; (3) refused to meet with Plaintiff regarding his 2006 performance evaluation; (4) yelled at Plaintiff for filing a charge of discrimination; (5) falsified his 2005 evaluation; and (6) initiated an investigation of Plaintiff's work in an attempt to find a reason to terminate him.

30. Defendant intended to force Plaintiff to resign from his position.

31. As a result of Defendant's actions, Plaintiff had no alternative but to resign from his position.

32. Plaintiff resigned from his position on July 9, 2006.

33. By and through its conduct, Defendant constructively discharged Plaintiff from his employment.

34. Plaintiff has sustained damages as a result of defendant's unlawful conduct consisting of lost wages and benefits, front pay, front benefits, emotional distress, pain and suffering and mental anguish.

## COUNT 1

35. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-22.

36. By and through its conduct, Defendant discriminated against Plaintiff on the basis of his national origin in violation of Title VII of the Civil Rights Act of 1964.

## COUNT 2

37. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-24.

38. By and through its conduct, Defendant discriminated against Plaintiff in reprisal for filing an EEO complaint in violation of Title VII of the Civil Rights Act of 1964.

## JURY DEMAND

Plaintiff demands a trial by jury on each count in this complaint.

WHEREFORE, Plaintiff demands judgment against Defendant on Counts 1 and 2 and seeks $300,000.00 in compensatory damages for pain and suffering, mental anguish, emotional distress and in addition, Plaintiff demands reasonable attorneys' fees.

Date:  September 5, 2008

/s/
_____
Alan Lescht
Susan L. Kruger
Alan Lescht & Assoc., PC
1050 17th St., NW, Suite 220
Washington, D.C. 20036
Tel (202) 463-6036
Fax (202) 463-6067
Attorneys for Plaintiff

7